UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN C. CAMPBELL, et al., Derivatively on Behalf of New Energy Systems Group,

Plaintiffs,

-against-

12 Civ. 3169 (LAK)

WEIHE YU, et al.,

Defendants,

and

NEW ENERGY SYSTEMS GROUP,

Nominal Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Caryn G. Schechtman
Joshua S. Sohn
David V. Sack
Robert D. Weber
DLA PIPER US LLP
*Attorneys for Defendants New Energy Systems Group, Weihe Yu, Junfeng Chen, Shuxian Cui, Li Liu, Elan Yaish, Goldman Kurland & Mohidin LLP, Yvonne Zhang and V Trust Accounting and Tax Services*

Joseph P. Guglielmo
Erin G. Comite
Anne L. Box
SCOTT + SCOTT LLP
*Attorneys for Plaintiffs*

LEWIS A. KAPLAN, *District Judge.*

Plaintiffs John Campbell, Basil Malouf, and Baseem Malouf bring this shareholder derivative suit on behalf of nominal defendant New Energy Systems Group ("New Energy"). They assert that the officers and directors breached their fiduciary duties by failing to maintain adequate internal controls over financial reporting and by issuing false and misleading statements in the company's public disclosures. Plaintiffs allege further that the officers and directors breached their fiduciary duties in the sale and acquisition of New Energy subsidiaries. Finally, they claim that New Energy's accountants breached their contract, were enriched unjustly, and aided and abetted the officers' and directors' alleged breaches of their fiduciary duties.

Defendants move to dismiss for failure to make a demand on the board of directors or to establish demand futility. They argue that plaintiffs have not alleged particularized facts creating a reasonable doubt that a majority of the board would have been disinterested and independent or that the challenged transactions were otherwise a product of a valid exercise of business judgment. Defendants move alternatively to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## *I. The Parties*

The plaintiffs are, and at all relevant times have been, shareholders of New Energy.[1] New Energy is a Nevada corporation with its principal place of business in New York.[2] Its operating

1 Am. Compl. [DI 11] ¶¶ 19, 20.

2 *Id*. ¶¶ 2, 21.

subsidiaries, however, are based in the People's Republic of China ("PRC").[3] New Energy manufactures and distributes batteries and backup power systems for portable electronic devices.[4]

At the time the amended complaint (the "Complaint") was filed in August 2012, New Energy maintained a four-person board of directors.[5] Specifically, defendant Weihe Yu has served as chairman of the board since December 2009 and as chief executive officer since August 2011.[6] Defendant Elan Yaish has served as a director since June 11, 2010 and serves also as chair of the audit committee.[7] Defendant Shuxian Cui has served as a director since June 9, 2010 and is a member of the audit committee.[8] Defendant Li Liu has served as a director since May 18, 2010 and is a member of the audit committee.[9]

The suit is brought also against certain former officers and directors of New Energy. Defendant Junfeng Chen served as chief financial officer from August 2009 through August 2011.[10] Defendant Fushun Li served as chief executive officer and a director from May 2009 until he resigned

---

3 *Id*. ¶¶ 2, 21, 76.

4 *Id*. ¶ 2.

5 *Id*. ¶ 256.

6 *Id*. ¶ 22.

7 *Id*. ¶ 28.

8 *Id*. ¶ 26.

9 *Id*. ¶ 27.

10 *Id*. ¶ 23.

in May 2010.[11] Immediately thereafter, defendant Nian Chen served as chief executive officer from May 2010 until his resignation in August 2011.[12]

Defendant Goldman Kurland & Mohidin, LLP ("GKM") is an accounting firm that has served as New Energy's independent auditor since 2009.[13] Defendant V Trust Accounting and Tax Services ("V Trust"), another accounting firm, and its sole proprietor, defendant Yvonne Zhang, assisted in the preparation of New Energy's financial statements in 2009 and 2010.[14]

### *II. Factual Background*

Plaintiffs complain first of New Energy's alleged failure to implement effective internal controls over financial reporting, which they claim resulted in overstatements of New Energy's financial results and earnings potential.[15] They contend that reports filed by New Energy with the Securities and Exchange Commission ("SEC") from April 15, 2010 to the present (the "Relevant Period")[16] were materially false and misleading because they:

---

11. *Id.* ¶ 25.

12. *Id.* ¶ 24.

    Defendants Fushun Li and Nian Chen have not been served with the Complaint and are not parties to defendants' motion. *See* Defs. Mem. of Law [DI 39], at 4; Pls. Opp. [DI 45], at 1 n.1.

13. Am. Compl. ¶¶ 33, 216.

14. *Id.* ¶ 34.

15. *Id.* ¶ 90.

16. *Id.* ¶ 1.

- stated falsely that the company's internal controls over financial reporting were effective;[17]
- stated falsely that they were prepared in accordance with generally accepted accounting principles ("GAAP");[18]
- failed properly to account for goodwill in connection with certain acquisitions and to record warrants issued to an investor relation firm in accordance with GAAP;[19]
- stated falsely that New Energy would "continually receive orders from our loyal customers" and was "confident the battery distribution business will be profitable due to the outstanding battery quality and the strong distribution network;"[20]
- failed to disclose "that counterfeit products were . . . impacting New Energy's sales;"[21] and
- incorrectly stated the Company's financial results.[22]

---

17 *See, e.g.*, *id*. ¶¶ 85, 90-113.

18 *See, e.g.*, *id*. ¶¶ 80-82, 110.

19 *See, e.g.*, *id*. ¶¶ 170-205.

20 *See, e.g.*, *id*. ¶¶ 85, 114-138.

21 *See, e.g.*, *id*. ¶¶ 85, 125, 127-138.

22 *See, e.g.*, *id*. ¶¶ 83-85, 139-150.

The Complaint alleges that "the Company's share price has been decimated" as a result of these misstatements and omissions.[23]

Beginning in November 2010, the SEC initiated correspondence with New Energy and provided comments on its financial disclosures that, according to plaintiffs, specifically focused on New Energy's allegedly ineffective internal controls over financial reporting as well as on accounting issues.[24] Plaintiffs allege that New Energy's responses demonstrate that the officers and directors had "a complete lack of understanding of U.S. accounting standards,"[25] that it "did not have an effective internal audit department or internal control system,"[26] that "its financial managers and CFO had limited education relating to U.S. GAAP and SEC Rules and Regulations,"[27] and that the audit committee was not installed until June 2010,[28] when New Energy appointed outside directors Cui, Liu, and Yaish.[29]

On March 28, 2011, New Energy filed its 2010 annual report in which it disclosed that there was a material weakness in New Energy's internal control over financial reporting and that its

23 *Id.* ¶ 211.

24 *Id.* ¶ 97 & Ex. 1.

25 *Id.* ¶ 98.

26 *Id.* ¶ 99.

27 *Id.* ¶ 100.

28 *Id.* ¶ 102.

29 *Id.* ¶¶ 26-28.

internal controls therefore were not effective.[30] On June 6, 2011, New Energy filed amendments to its 2009 annual report and its quarterly reports for the first three quarters of 2010 in which it restated the financial statements and revised certain disclosures.[31] The financial statements corrected certain

---

30

*Id*. ¶¶ 106-108.

Consideration of documents filed with the SEC on a motion to dismiss is appropriate "'to determine *what* the documents stated,' and '*not to prove the truth of their contents*.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (alteration in original) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). "When a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed." *Id*. (citation omitted). The Complaint here is riddled with confusing and erroneous locutions. The Court therefore has taken the substance of the allegations and considered them alongside the SEC reports to understand what representations were made.

The 2010 annual report disclosed: "[M]anagement concluded that at December 31, 2010 there was a material weakness and therefore, the internal control over financial reporting was not effective. A material weakness is a deficiency, or a combination of control deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. The Company's material weakness in its internal control over financial reporting is related to a limited U.S. GAAP technical accounting expertise. . . . In order to mitigate this material weakness to the fullest extent possible, external consultants were used . . . . [M]anagement believes that the consolidated financial statements and other information presented herewith are materially correct. Management believes that the weakness did not have any effect on the accuracy of the Company's consolidated financial statements for the current reporting period." New Energy Systems Group Annual Report 2010 (Form 10-K) (Mar. 28, 2011), [DI 40-3], at 22.

31

Am. Compl. ¶¶ 83, 110; *see also* New Energy Systems Group Amend. No. 1 to Annual Report 2009 (Form 10-K/A) (June 6, 2011), at 3, *available at* https://www.sec.gov/Archives/edgar/data/1144320/000101376211001631/form10ka.htm; New Energy Systems Group Amend. No. 1 to Quarterly Report Ended Mar. 31, 2010 (Form 10-Q/A) (June 6, 2011), at 1, *available at* https://www.sec.gov/Archives/edgar/data/1144320/000101376211001634/ form10qa.htm; New Energy Systems Group Amend. No. 1 to Quarterly Report Ended Aug. 16, 2010 (Form 10-Q/A) (June 6, 2011), at 2, *available at* https://www.sec.gov/Archives/ edgar/ data/ 1144320/ 000101376211001635/form10qa.htm; New Energy Systems Group Amend. No. 1 to Quarterly Report Ended Sept. 30, 2010 (Form 10-Q/A), (June 6, 2011), at 2, *available at* https://www.sec.gov/Archives/edgar/data/1144320/000101376211001637/ form10qa.htm.

accounting errors to comply with U.S. GAAP.[32] The amended disclosures stated that New Energy's internal control over financial reporting was not effective.[33] On July 14, 2011, New Energy restated the financial statements in its 2010 annual report to account, in accordance with U.S. GAAP, for the expense of certain warrants issued to an investor relation firm, reducing its net income by $868,872.[34]

Plaintiffs complain also of two New Energy transactions.

*First*, plaintiffs assert that New Energy overpaid for Kim Fai – a solar panel company it acquired for $28 million in November 2010.[35] Although New Energy claimed in a press release dated March 29, 2011 that the Kim Fai business was expected to contribute approximately $24 million in revenue in 2011, its annual report revealed that "the Kim Fai acquisition only resulted in $20.23

---

[32] Am. Compl. ¶ 83. The Complaint alleges two such accounting errors. *First*, New Energy failed properly to account for the initial purchase price of certain acquisitions, resulting in an understatement of the purchase price. *Id*. *Second*, New Energy failed properly to account for equity based compensation related to stock issued to consultants, which plaintiffs allege resulted in "misstatements of $2,279,743." *Id*. In fact, the restated financials for the stock issued to consultants recorded that equity-based compensation as an *asset* in the balance sheet. *See, e.g.*, New Energy Systems Group Amend. No. 1 to Annual Report 2009 (Form 10-K/A) (June 6, 2011), at F-23, *available at* https://www.sec.gov/Archives/edgar/data/1144320/000101376211001631/form10ka.htm.

[33] *Id*. ¶¶ 83, 110, 111.

[34] *Id*. ¶¶ 11, 84.

The Complaint is internally inconsistent with respect to the date on which New Energy restated its 2010 financial statements. *Compare id*. ¶ 11 ("On July 14, 2011, the Company was forced to restate its 2010 Form 10-K . . . ."), *with id*. ¶ 84 ("On July 14, 2010, the Company was forced to restate its 2010 Form 10-K . . . ."). Because New Energy did not file its original 2010 Annual Report until March 28, 2011, it is inconceivable that it restated those financial statements in 2010. *See id*. ¶ 106. The Court thus assumes that plaintiffs intended to refer to July 14, 2011. *See also* New Energy Systems Group Amend. No. 2 to Annual Report 2010 (Form 10-K/A) (July 14, 2011), *available at* https://www.sec.gov/Archives/edgar/data/ 1144320/000101376211001907/form10ka.htm.

[35] Am. Compl. ¶¶ 155, 162.

million dollars in sales during 2011."[36] Plaintiffs allege that defendants misled the public regarding the true profitability of Kim Fai and overpaid for the company.[37] The Complaint alleges also that the directors failed to disclose that a 5.8 percent shareholder of New Energy owns a company that was one of Kim Fai's largest customers.[38]

*Second*, plaintiffs complain of the sale in November 2011 of Billion (and its wholly owned subsidiaries E'Jenie and New Power) for $13.5 million to the vice president of E'Jenie and the director of marketing of NewPower.[39] New Energy represented that the selling price reflected the appraisal value of the entities less debt that New Energy owed E'Jenie.[40] Plaintiffs assert, however, that this was a "grossly inadequate price," that New Energy "falsely claimed that New Energy owed E'Jenie $24,287,500 in debt," and that the directors "sold NewPower to two insiders for nothing."[41]

Plaintiffs complain finally that GKM failed to perform its audit of New Energy in a reasonable manner and did not conduct a "reasonable investigation of whether the Company's financial statements were presented in compliance with GAAP and whether management's assessment

---

36 *Id*. ¶¶ 156, 159.

37 *Id*. ¶¶ 157, 161-62.

38 *Id*. ¶¶ 163-69.

39 *Id*. ¶ 151.

The equity transfer agreement was signed shortly after New Energy filed a quarterly report disclosing a "42% decrease in net revenue," "a decrease in selling prices" due to pirated products, and a "$13,564,691 write-off of goodwill" as a result of "slow-down of the battery industry in China." *Id*. ¶ 135.

40 *Id*. ¶ 151.

41 *Id*. ¶¶ 152-53.

of internal controls was properly and accurately presented."[42] The Complaint asserts also that V Trust and Zhang failed to remedy the false and misleading financial statements.[43]

Prior to filing suit, plaintiffs did not serve a demand on the New Energy directors. Rather, plaintiffs allege that any attempt to serve a demand would have been futile.

*Discussion*

*I. Governing Law*

"Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers."[44] As the management of the corporation's affairs generally resides in the board of directors, "equity courts established as a precondition for the suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions."[45]

Procedurally, Fed. R. Civ. P. 23.1 requires that derivative complaints "'state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not

---

42 *Id*. ¶ 225.

43 *Id*. ¶ 237.

44 *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (citation and internal quotation marks omitted).

45 *Id*. at 96 (citation and internal quotation marks omitted).

obtaining the action or not making the effort.'"[46] The substantive law governing whether demand, in fact, would be futile is the law of the state in which the nominal corporate defendant is incorporated, here, Nevada.[47] Nevada has adopted Delaware's two principal tests to evaluate demand futility.[48]

*First*, where a claim involves "a contested transaction[,] *i.e.,* where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties," then under the *Aronson* test, plaintiffs must "allege particularized facts creating a reason to doubt that '(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'"[49] Under the business judgment rule, courts presume "that in making a business decision[,] the directors of a corporation acted on an informed

---

46

*Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir. 2009) (quoting FED. R. CIV. P. 23.1).

Although Fed. R. Civ. P. 23.1 governs the particularity of demand allegations for a derivative action in federal court, the Court notes that Nevada law also requires derivative complaints to "set forth with particularity the efforts of the plaintiff to secure from the board of directors or trustees and, if necessary, from the shareholders such action as the plaintiff desires, and the reasons for the plaintiff's failure to obtain such action or the reasons for not making such effort." NEV. REV. STAT. § 41.520(2) (2013).

47

*See Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004); *see also Halebian*, 590 F.3d at 204 (recognizing that the demand requirement "clearly is a matter of 'substance,' not 'procedure'" (citation omitted)).

48

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006) ("The Delaware court's approach is a well-reasoned method for analyzing demand futility and is highly applicable in the context of Nevada's corporations law. Hence, we adopt the test described in *Aronson*, as modified by *Rales* . . . .").

49

*Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) (alteration in original) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

basis, in good faith, and in the honest belief that the action taken was in the best interests of the company."[50]

*Second*, where the suit challenges "not a business decision of the Board but rather a violation of the Board's oversight duties," then the *Rales* test "requires that the plaintiff allege particularized facts establishing a reason to doubt that 'the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'"[51]

Both *Aronson* and *Rales* require courts to evaluate whether directors are disinterested and independent. Directors lack independence if they are so "beholden" to others or "so under their influence that their discretion would be sterilized."[52] Directors are interested if they "appear on both sides of a transaction []or expect to derive any personal financial benefit from it in the sense of self-dealing."[53] Additionally, "[a] director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."[54]

---

50 *Aronson*, 473 A.2d at 812; *see also Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1082 (Del. 2011) ("The entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." (internal quotation marks and alterations omitted)).

51 *Wood*, 953 A.2d at 140 (citing *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)).

52 *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815).

53 *Aronson*, 473 A.2d at 812 (citations omitted).

54 *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 274 (S.D.N.Y. 2006) (citing *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995)).

"[T]he mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors" except in "rare cases."[55] The threat of liability must be "sufficiently substantial to cast a reasonable doubt over [the directors'] impartiality."[56] Further, where directors are exculpated from liability for certain conduct, "then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts."[57] Where, as here, the relevant state law – in this instance, Nevada's – immunizes directors from personal liability unless the "breach of those [fiduciary] duties involved intentional misconduct, fraud or a knowing violation of law,"[58] plaintiffs must plead particularized facts that, if true, would demonstrate that the directors "acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper."[59]

Where a board has an even number of directors, the vote of one-half of the board's total members can block the corporation from agreeing to the demand.[60] Thus, the Complaint must allege

---

55 *Aronson*, 473 A.2d at 815 (citations omitted).

56 *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003).

57 *Id*. at 501 (alteration in original) (citation omitted).

58 NEV. REV. STAT. § 78.138(7) (2013).

59 *Wood*, 953 A.2d at 141 (quoting *Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001); *Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001)); *see also La. Mun. Police Empl. Ret. Sys. v. Wynn*, No. 2:12-CV-509, 2013 WL 431339, at *6 (D. Nev. Feb. 1, 2013) ("Because NRS 78.138(7) requires intent or knowledge on the part of directors in order to hold them individually liable for their conduct, it would follow that failure to allege intent or knowledge would render defendants disinterested because they would not face a substantial likelihood of liability.").

60 *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004) (citing *Beneville v. York*, 769 A.2d 80, 85-86 (Del. Ch. 2000)).

with particularity that at least two of the four New Energy directors do not pass the applicable *Aronson* or *Rales* test to excuse demand.

*II. Inadequate Internal Controls and False and Misleading Statements Claims*

The parties dispute first whether the futility of demand as to the claims that New Energy failed to implement effective internal controls over financial reporting and made false and misleading statements in its public disclosures properly is evaluated under *Aronson* or *Rales*.

Demand futility for these claims is evaluated under *Rales* because plaintiffs "do not challenge any particular business decision" made by the current directors.[61] In urging otherwise, plaintiffs claim that the board "knowingly implemented, and consciously acquiesced in the persistence of, materially deficient internal controls and made knowingly false and misleading statements in the Company's SEC reports."[62] But the core of these allegations is a *Caremark*[63] claim that the board, and specifically those directors on the audit committee, failed adequately to monitor New Energy's internal controls and its public disclosures. The Complaint does not allege that the board approved the purportedly fraudulent conduct or that it consciously "permitted a known violation of law by the corporation to occur."[64] Thus, under *Rales*, for demand to be excused as to these claims, the

---

61 *Guttman*, 823 A.2d at 499.

62 DI 45, at 15.

63 *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).

64 *Id.* at 972.

particularized allegations of the Complaint must create a reasonable doubt that at least two of the four directors on the board could not have acted impartially in considering a demand.[65]

According to plaintiffs, the directors could not have acted impartially because each faced a substantial likelihood of liability. Specifically, plaintiffs claim that each director "approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders" and "authorized and/or permitted the false statements to be disseminated directly to the public."[66] Additionally, plaintiffs argue that Cui, Liu, and Yaish each faced a substantial likelihood of liability from their roles on the audit committee.[67] As members of the audit committee, those three directors were allegedly required to "review annually the adequacy of the Corporation's internal control over financial reporting" and "review with representatives of management and representatives of the independent accounting firm the Corporation's audited annual financial statements prior to their filing."[68]

The fundamental problem with plaintiffs' argument is that the directors are exculpated from liability unless plaintiffs' allegations "involved intentional misconduct, fraud, or a knowing

---

65 The same reasoning would apply even if the Court were to apply *Aronson* because plaintiffs' only basis for arguing that demand would be futile is the same theory discussed and rejected below.

66 Am. Compl. ¶¶ 259, 260.

The generalized allegations of knowledge and intent in the Complaint, such as these, do not satisfy the particularity requirements of Rule 23.1.

67 *Id*. ¶ 51.

68 *Id*. ¶¶ 47-48.

violation of law."[69] Plaintiffs fail to allege such misconduct. The three outside directors – Cui, Liu, and Yaish – did not join the board until May and June 2010, long after much of the misconduct of which plaintiffs complain.[70] Plaintiffs assert, for example, that "[w]hen New Energy filed its false and misleading 2009 Form 10-K," "there was no audit committee" and that defendants Li and Yu had "only a general understanding of U.S. GAAP and internal control over financial reporting."[71] But Cui, Liu, and Yaish were not associated with New Energy at that time and therefore could not face a substantial likelihood of liability for such conduct. In fact, plaintiffs themselves allege that the audit committee was formed within a month after these three directors joined the board.[72]

Nevertheless, plaintiffs claim that Cui, Liu, and Yaish faced a substantial likelihood of liability because they "did not come in and slam on the brakes."[73] Plaintiffs assert that the audit committee reviewed the SEC reports which "continued to insist that internal controls remained effective" and that New Energy's "financial statements remained accurate."[74] In so doing, plaintiffs argue that the directors "consciously ignor[ed] the SEC's obvious warnings" and additional factors

---

69 NEV. REV. STAT. § 78.138(7).

70 *See* DI 45, at 5 n.8 ("Cui, Liu and Yaish were not on the Board when the April 15, 2010 2009 Form 10-K or the May 14, 2010 Form 10-Q were filed . . . ."). Defendant Yu began serving on the board in 2009, but the Court need not separately consider at this time whether he was disinterested and independent because plaintiffs have not raised doubts that at least one of the other three directors could have acted impartially in considering a demand.

71 *Id.*, at 18; Am. Compl. ¶ 102.

72 Am. Compl. ¶¶ 26-28, 102.

73 DI 45, at 19.

74 *Id.* at 19-20.

that should have put them on notice of wrongdoing.[75] This argument faces several insurmountable difficulties.

Plaintiffs have not alleged facts "suggesting that the director defendants prepared the financial statements or that they were directly responsible for the [alleged] misstatements or omissions."[76] "The Board's execution of . . . financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality."[77] Moreover, allegations that the wrongdoing fell "within [the] delegated authority of a board committee" does not give rise to a substantial threat of personal liability without other particularized allegations demonstrating knowledge of wrongdoing.[78] The Complaint alleges only that the SEC reports contained false statements and material omissions, some of which were signed by all of the officers and directors, and that Cui, Liu, and Yaish should have reviewed them pursuant to their audit committee responsibilities. This is insufficient because such allegations do not establish any notice of illegality or fraudulent conduct.[79]

The same is true of plaintiffs' argument that the Court should infer knowledge of wrongdoing because New Energy allegedly "filed financial statements with the SEC that showed

---

75. *Id*. at 19-21.

76. *In re Citigroup, Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009).

77. *Wood*, 953 A.2d at 142 (citing *Guttman*, 823 A.2d at 498 (dismissing complaint that was "devoid of any pleading regarding the full board's involvement in the preparation and approval of the company's financial statements" and of "particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties.")).

78. *South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012) (citation omitted).

79. *See Citigroup*, 964 A.2d at 134.

substantially more revenue than those filed in China" and submitted certain financial statements with "unusual discrepancies."[80] The Complaint does not allege that the directors prepared or were responsible for those financial statements, nor does it allege any other facts that would have put the directors on notice of the purported discrepancies in New Energy's financial statements. Even assuming that the directors had noticed that New Energy's financial statements with the SEC showed substantially more revenue than the statements filed in China, the Complaint does not allege that the directors would have known that the SEC figures, and not those reported in China, were false, or that the differences in New Energy's financial statements were not attributable to differences in reporting rules or accounting standards.[81] Plaintiffs' allegations therefore are insufficient to infer knowledge of wrongdoing.

Moreover, plaintiffs misrepresent the nature of the SEC's correspondence. The correspondence does not convey any impression of fraud or illegality on the part of New Energy, nor does it convey a warning that the directors are alleged to have ignored.[82] Quite the contrary. The Complaint alleges that New Energy revised its public disclosures after the SEC provided comments.[83]

---

80 DI 45, at 21-22.

81 *See In re China Valves Tech. Sec. Litig.*, No. 11 Civ. 0796 (LAK), 2012 WL 4039852, at *6 (S.D.N.Y. Sept. 12, 2012).

82 *See* Jan. 6, 2011 Ltr. from J. Jaramillo (SEC) to Junfeng Chen, [DI 11-1], at 46 of 192 ("We note that you concluded that disclosure controls and procedures and internal control over financial reporting were effective. We also note that you identified various weaknesses in your internal controls, including the lack of expertise in U.S. accounting principle [*sic*] among the personnel in the company. Given the aforementioned, please explain how you considered these internal control weaknesses in concluding your disclosure controls and procedures and internal control over financial reporting were effective.").

83 Plaintiffs' reliance on *In re Abbott Labs. Derivative Shareholder Litigation* is therefore misplaced. 325 F.3d 795 (7th Cir. 2001). While it is true that the Seventh Circuit there found that the wrongdoing "would have been shared at the board meetings," it based its

New Energy's restated financial reports corrected accounting errors to comply with U.S. GAAP and its revised disclosures stated that, in fact, its internal control over financial reporting was not effective. Plaintiffs maintain that even the revised disclosures were false and misleading because they concluded that the financial statements were "materially correct."[84] But there are no particularized allegations to suggest that the allegedly deficient internal controls or false and misleading statements (either before or after the SEC correspondence) were the result of the directors' "intentional misconduct, fraud, or a knowing violation of law."

### *III. Challenged Transactions Claims*

Plaintiffs allege next that the defendants breached their fiduciary duties in acquiring the Kim Fai solar business in November 2010 and in selling NewPower and E'Jenie in November 2011. The parties agree that the *Aronson* test applies to these claims, but plaintiffs have not alleged particularized facts to establish demand futility.

*First*, the Complaint does not allege facts that raise a reason to doubt the directors' independence or disinterestedness regarding these transactions. Plaintiffs have not alleged that the directors appeared on both sides of or otherwise gained a material benefit from either transaction. Nor have they alleged that the directors were "beholden" to any other individual such that their independence would be called into doubt. Moreover, nothing indicates that the directors engaged in

---

finding on a set of facts including "six years of noncompliance, inspections, 483s, Warning Letters, and notice in the press, all of which then resulted in the largest civil fine ever imposed by the FDA and the destruction and suspension of products which accounted for approximately $250 million in corporate assets." *Id*. at 806, 809. That is not this case.

84 Am. Compl. ¶¶ 110, 112.

"intentional misconduct, fraud, or a knowing violation of law."[85] The bare and conclusory assertions in the Complaint, such as that the sale of E'Jenie and NewPower for $13.5 million "conferred no benefit on the Company" and "was made in bad faith," do not satisfy the particularity requirement of Rule 23.1 or Nevada law and do not provide a reason to doubt the disinterestedness or independence of the directors.[86]

*Second*, the Complaint does not allege facts sufficient to rebut the presumption that these transactions were valid exercises of the board's business judgment. "It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision, except in rare cases [where] a transaction may be so egregious on its face that the board approval cannot meet the test of business judgment."[87]

To be sure, the presumption that a director acted on an informed basis and in good faith may be rebutted by allegations that the director "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation, where the fiduciary act[ed] with the intent to violate applicable positive law, or where the fiduciary intentionally fail[ed] to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."[88] But nothing of the sort is alleged here. Despite plaintiffs' assertions that the purchase and sale prices for these transactions "bore no relation to [their] actual value,"[89] the Complaint acknowledges that the sale of Billion (and its subsidiaries

---

85 NEV. REV. STAT. § 78.138(7).

86 *See* Am. Compl. ¶¶ 152, 154.

87 *Brehm*, 746 A.2d at 261 n.54 (internal quotation marks and citation omitted).

88 *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).

89 DI 45, at 23-24.

NewPower and E'Jenie) was based on an appraisal value of the entities less debt that New Energy owed E'Jenie.[90] Moreover, there are no particularized allegations that indicate that the directors intentionally acted for any reason other than "the honest belief that the action taken was in the best interests of the company."[91] Plaintiffs therefore have not demonstrated that demand should be excused for the challenged transaction claims.

*IV. Accountant Defendants' Claims*

Finally, plaintiffs have asserted claims against New Energy's accountants – GKM, V Trust, and Yvonne Zhang – for breach of contract, unjust enrichment, and aiding and abetting New Energy's officers and directors in breaching their fiduciary duties. The parties agree that the *Rales* test applies to these claims. Nonetheless, plaintiffs were required to make a pre-suit demand on the board before bringing a derivative suit against New Energy's accountants or to state with particularity the reasons for not making the effort.

Plaintiffs argue that demand would have been futile because the directors could not impartially have considered a demand to sue their accountants when those claims involve the same false and misleading statements and challenged transactions that the board had approved. As

---

90 Am. Compl. ¶ 151. The Complaint alleges also that New Energy "falsely claimed that New Energy owed E'Jenie $24,287,500 in debt," but there are no allegations suggesting that the directors were responsible for or aware of the alleged falsity or that they sold Billion for any reason other than to advance New Energy's best interests. *See id.* ¶ 153. In fact, the Complaint itself alleges that the sale of Billion occurred shortly after New Energy reported a "challenging quarter" in E'Jenie and disclosed a "42% decrease in net revenue," "a decrease in selling prices" due to pirated products, and a "$13,564,691 write-off of goodwill" as a result of "slow-down of the battery industry in China." *Id.* ¶¶ 135, 137. Plaintiffs have not alleged any reason to doubt, under these circumstances, that the sale of Billion (and its subsidiaries E'Jenie and NewPower) was not the result of a valid exercise of the board's business judgment.

91 *Aronson*, 473 A.2d at 812.

described above, however, the Complaint does not raise a reason to doubt the directors' ability to impartially consider a demand regarding their own alleged conduct. For similar reasons, plaintiffs have failed to allege that demand should be excused as to the claims against New Energy's accountants.[92]

*Conclusion*

For the foregoing reasons, defendants' motion [DI 38] to dismiss the Complaint for failure to make a demand on the board or to establish demand futility is granted. The Court need not reach the issue whether the Complaint fails to state a legally sufficient claim. Defendants Fushun Li and Nian Chen have not been served in accordance with Fed. R. Civ. P. 4(m).[93] Plaintiffs shall show cause, on or before June 24, 2014, why this action should not dismissed as to them for failure to prosecute.

SO ORDERED.

Dated: June 10, 2014

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

92 Plaintiffs argue that defendants forfeited this argument by not raising it in their memorandum of law. Defendants, however, sought to dismiss all claims for failure to establish demand futility.

93 *See* DI 45, at 1 n.1.